MERCHANTS' BANK OF KANSAS CITY, Mo., *v.* PINE BLUFF
PRODUCE & PROVISION COMPANY.

Opinion delivered February 7, 1921.

BILLS AND NOTES—LIABILITY OF PURCHASER OF DRAFT WITH BILL OF LAD-
ING ATTACHED.—A bank which purchased from the seller of a
carload of produce a draft for the purchase price with bill of
lading attached did not thereby become substituted to the seller's
liability for defects in the quality of the produce.

Appeal from Jefferson Circuit Court; *W. B. Sorrels,*
Judge; reversed.

STATEMENT OF FACTS.

On February 9, 1920, the Pine Bluff Produce & Pro-
vision Company, a domestic corporation, brought this
suit in the circuit court against the Michael-Swanson-
Brady Produce Company, a foreign corporation, as de-
fendant, and the Citizens' Bank of Pine Bluff, as gar-
nishee.   The basis of the suit is, that on the 26th day of
January, 1920, the defendant shipped to the plaintiff
from Kansas City, Kansas, to Pine Bluff, Arkansas, a
mixed car of produce on shipper's order bill of lading.
A draft for the sum of $1,574.16, representing the price·
of the merchandise, was drawn by the defendant on the
plaintiff, to which was attached a bill of lading for the
car of merchandise.   The draft was paid by the plaintiff.
The contract of sale gave the plaintiff the right of in-
spection, and upon the arrival of the car at Pine Bluff
on the 3d day of February, 1920, an inspection of the
merchandise was made.   It was ascertained that a por-
tion of the produce was rotten and otherwise in a dam-
aged condition.

On January 27, 1920, the defendant, Michael-Swan-
son-Brady Produce Company deposited the draft for the
sum of $1,574.16 with the Merchants' Bank of Kansas
City, Mo., with the bill of lading for the car of produce
attached.   The draft with the bill of lading attached was
duly assigned to the bank, and the bank gave the produce
company credit for the amount of the draft.   The pro-
duce company received credit for the amount of the draft
and checked the amount out of the bank.

The bank was also made a defendant to the present suit. The court below, sitting as a jury, found in favor of the plaintiff, the Pine Bluff Produce & Provision Company, and rendered judgment against the defendant, Merchants' Bank of Kansas City, Mo., for $200, which was shown by the evidence to be the amount of damage suffered by the plaintiff by reason of the rotten condition of the produce when received at Pine Bluff.

The Merchants' Bank of Kansas City, Mo., has duly appealed to this court.

*A. R. Cooper,* for appellant.

The relation of vendor and vendee did not exist in this transaction; the relation is that of debtor and creditor. 107 Ark. 601; 156 S. W. 187; 196 U. S. 280-5. This doctrine was approved in 101 Ark. 206, 142 S. W. 178. The declaration of law asked by appellant should have been given and the demurrer sustained.

*Harry T. Wooldridge,* for appellee.

The appellant bank, by taking the draft in the regular course of business and giving Michael-Swanson-Brady Produce Company credit therefor became the owner of the produce and was liable for any inferiority in quality or quantity of the goods described in the bill of lading. The bank stepped into the shoes of the shipper or depositor when it became the owner of the draft and bill of lading and was bound to carry out the contract of the shipper as reflected by the bill of lading. 126 Ark. 366, 375. See, also, 105 U. S. 7; 77 Ark. 482; 87 *Id.* 26. By statute and our decisions a transferee of a bill of lading becomes the owner of the goods. 91 U. S. 98; 19 Tex. Civ. App. 246; 46 S. W. 48; 32 So. Rep. 287; 49 L. R. A. 679; 126 N. C. 176; 144 Ala. 562; 39 So. Rep. 129; 1 L. R. A. (N. S.) 242. The ruling of these cases should be followed as there is no error.

HART, J. (after stating the facts). The theory of the plaintiff, which was adopted by the lower court, is, that when the Merchants' Bank of Kansas City, Mo., pur-

chased the draft drawn by the seller on the purchaser with bill of lading attached, the bank became the owner of the car of merchandise and responsible for the performance of the contract of the seller for the sale of the car of produce and was liable in damages for any loss suffered by the purchaser on account of the produce being rotten, or otherwise damaged.

There are cases sustaining the contention of the plaintiff, but they are opposed to the weight of authority and to the reasoning of this court in previous cases bearing on the question.

In *Brown* v. *Yukon Nat. Bank,* 138 Ark. 210, the contest was between the bank, to whom the consignor of the goods had assigned the draft with bill of lading attached, and the purchasers who had paid the draft in the hands of a local bank for collection. The purchasers garnished the funds in the hands of the local bank for an amount alleged to be due them by reason of a breach of contract on the part of the seller of the produce. The bank, to whom the draft with the bill of lading attached had been assigned, did not know of any claim of the buyer against the seller for breach of the contract. The court held that where a draft is indorsed to and deposited with a bank and the amount credited to the holder's account, the bank becomes the absolute owner of the draft and entitled to the proceeds in the hands of a garnishee. To the same effect is the decision in *Cox Wholesale Grocery Co.* v. *National Bank of Pittsburg, Kansas,* 107 Ark. 601.

While the cases just referred to do not control the present case, it is apparent that the holding would have been otherwise if the court had taken the position that an assignee for value of a draft with bill of lading attached made to shipper's order succeeded to the situation of the shipper, and was bound to carry out his contract, and the court would not have held that the bank, which had discounted the draft in good faith, without knowing that the buyer had any claim against the shipper for breach of contract, could recover.

We think it is an erroneous position to assume that a bank, in discounting a draft for the purchase price of goods with bill of lading attached, takes over the original contract of sale, and becomes substituted to all the liabilities of the original drawer of the draft to the purchaser. It has been well said that such a holding would not only violate well-settled rules of law governing commercial paper, but would also tend to decrease the immense volume of business which is carried on by shippers of cotton, stock, grain, and other commodities by restricting that freedom with which banks advance money to the drawers of such drafts with bills of lading attached. If banks could be made liable in damages on account of defects in the quality or quantity of the property covered by the bill of lading, a serious impediment would be placed in the way of shippers who need a part or all of the price of the commodities sold before their arrival in the market to which they are consigned.

The question has received the careful consideration of annotators, and in several case notes numerous decisions are cited to the effect that a bank which discounts a draft with bill of lading attached is not, in the absence of bad faith, answerable to the drawee for the performance of the consignor's contract. In each of the cases cited the court has held that the drawee of a draft with bill of lading attached can not, in case the consignor does not comply with the contract, garnish the proceeds of the draft in the hands of the collecting bank to make good his loss on account of the inferiority of the consignment. *Hawkins* v. *Alfalfa Products Co.* (Ky.), 44 L. R. A. (N. S.) 600; *General Mercantile Co.* v. *Oklahoma State Bank* (Kan.), 33 L. R. A. (N. S.) 954; *Mason* v. *Nelson* (N. C.), 18 L. R. A. (N. S.) 1221 and note; *Lewis* v. *Small & Company and Mechanics National Bank of Knoxville* (Tenn.), 6 L. R. A. (N. S.) 887; case note to *Haas* v. *Citizens' Bank,* 1 L. R. A. (N. S.) 242; case note to *Finch* v. *Gregg* (N. C.), 49 L. R. A. (N. S.) 679, and 4 R. C. L., § 36, p. 34.

The bank gave value for the draft with the bill of lading attached in the present case, and there is nothing in the record to show bad faith on its part in the transaction.

It follows that the judgment must be reversed, and the cause will be remanded for a new trial.